Timmy Ray DENBOW, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–91–01330–CR.

Court of Appeals of Texas,
Dallas.

Aug. 6, 1992.

Jack D. Nation, Dallas, for appellant.

April E. Smith, Dallas, for appellee.

Before THOMAS, CHAPMAN, and
WIGGINS, JJ.

## OPINION

THOMAS, Justice.

The trial court convicted Timmy Ray Denbow of possession of methamphetamine and assessed punishment at five years' confinement. In a single point of error, Denbow challenges the sufficiency of the evidence to support his conviction. We sustain the point of error. Accordingly, we reverse the trial court's judgment and render a judgment of acquittal.

## STANDARD OF REVIEW

In evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. We determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Turner v. State,* 805 S.W.2d 423, 427 (Tex.Crim. App.), *cert. denied,* —— U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). This standard applies in both direct and circumstantial cases. *Turner,* 805 S.W.2d at 427. In a circumstantial-evidence case, the "reasonable doubt" portion of the test is satisfied if the evidence excludes every reasonable hypothesis except an appellant's guilt. *Carlsen v. State,* 654 S.W.2d 444, 447 (Tex. Crim.App.1983).[1] The evidence will sustain

---

1. The Court is aware of the Court of Criminal Appeals opinion in *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991), which overrules *Carl-* *sen* and eliminates the "reasonable hypothesis" appellate construct for determining sufficiency. However, *Geesa* expressly applies only to cases

the conviction if warranted by the combined and cumulative force of all the incriminating circumstances. *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex.Crim.App. 1987).

## ELEMENTS OF THE OFFENSE

To prove possession of a controlled substance, the State must establish that the accused (1) exercised care, control, and management over the substance and (2) knew the matter possessed was a controlled substance. *Humason v. State,* 728 S.W.2d 363, 364 (Tex.Crim.App.1987). The State may prove both of these elements circumstantially. *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App.1985). The State must show that the accused was aware that his conduct or the circumstances surrounding his conduct constituted possession of a controlled substance. *Humason,* 728 S.W.2d at 365. Proof that amounts to only a strong suspicion or mere probability is insufficient to support a conviction. *Humason,* 728 S.W.2d at 366. The evidence must establish affirmative links, beyond mere presence, between the accused and the controlled substance. *Humason,* 728 S.W.2d at 365; *McGoldrick,* 682 S.W.2d at 578.

The State can establish affirmative links by showing additional facts and circumstances that indicate the accused's knowledge and control of the contraband. *Guiton v. State,* 742 S.W.2d 5, 8 (Tex.Crim. App.1987). Among such additional facts are (1) the controlled substance was in plain view; (2) the accused had convenient access to the controlled substance; (3) the place where the contraband was found was enclosed; (4) the accused owned the place where the controlled substance was found; (5) the accused was the driver of the automobile in which the controlled substance was found; and (6) the contraband was found on the same side of the car seat as the accused was sitting. *Guiton,* 742 S.W.2d at 8. Also, an accused's attempt to flee is a factor that can be considered. *See Herndon v. State,* 787 S.W.2d 408, 410

(Tex.Crim.App.1990). The State need not prove a set formula of facts to establish possession. *Humason,* 728 S.W.2d at 366–67.

## FACTUAL BACKGROUND

Irving Police Officer Charles Cunningham was on the lookout for a stolen car. As the officer drove through an apartment complex parking lot at 2:08 a.m., Denbow slowly passed him in a car that "somewhat" matched the description of the stolen car. Denbow, who was wearing a hat, looked at the officer with surprise. Thinking that Denbow might have been involved in the car theft, Officer Cunningham began to turn his patrol car in order to follow him. Denbow then accelerated his vehicle and drove recklessly through the parking lot. Officer Cunningham pursued him with the emergency lights on. Denbow drove into a parking space and hit the curb. Officer Cunningham parked behind him. Denbow immediately jumped out of his car on the driver's side and ran. The officer identified himself and ordered Denbow to stop. However, Denbow ignored the officer's command. Officer Cunningham lost sight of him because Denbow ducked behind parked cars. Officer Cunningham called for backup and then checked Denbow's car. He saw Denbow's hat lying on the ground near the front fender on the driver's side of the car. Within a foot of the hat, the officer saw a right-hand glove and a pill bottle. The bottle contained methamphetamine. Officer Cunningham saw Denbow run by the area where the three items were found.

Officer Cunningham and another officer went in the direction they had last seen Denbow running. Officer Cunningham found Denbow lying on a second floor landing of a flight of stairs. At the time of Denbow's arrest, he had a left-hand glove that matched the one lying next to the pill bottle.

## AFFIRMATIVE LINKS

Denbow asserts that, because the pill bottle was not found in his personal posses-

---

tried after the issuance of the opinion. 820 S.W.2d at 160–61. Because this case was tried

before November 6, 1991, we will use the "reasonable alternative hypothesis" construct.

sion, the State failed to establish sufficient affirmative links between him and the methamphetamine. Specifically, Denbow argues that he did not have exclusive control over the area where Officer Cunningham found the pill bottle. He contends that the officer did not see him hold or drop the hat, glove, or pill bottle and that the officer did not see the path he took as he ran from the car.

The State acknowledges that most of the affirmative links established by case law do not apply in this case because the police found the methamphetamine on a parking lot rather than at a residence or in a vehicle. We note that the incriminating evidence shows that:

(1) Denbow looked surprised when he saw the police;

(2) Denbow attempted to evade Officer Cunningham, suggesting that he had something to hide;

(3) Officer Cunningham found the methamphetamine next to Denbow's car, suggesting that he had convenient access to the controlled substance; and

(4) Denbow's hat and glove were found within a foot of the pill bottle which contained the methamphetamine, suggesting that Denbow had possession of all three items and that he dropped them when he exited the car.

Denbow's Reaction to the Police

■ A police officer's testimony that an accused appeared nervous may be a relevant factor to be considered in evaluating the evidence. *See Meeks v. State*, 692 S.W.2d 504, 511 (Tex.Crim.App.1985). Although Officer Cunningham did not state that Denbow appeared nervous, we conclude that the statement that Denbow appeared surprised is analogous.

In *Meeks*, the Court of Criminal Appeals found the evidence insufficient to uphold a conviction for possession of marijuana found in the trunk of a car in which Meeks was a passenger. To support its position, the State relied in part upon the police officers' testimony that Meeks appeared nervous and that the smell of marijuana

was strong in the car. *Meeks*, 692 S.W.2d at 511.

A nervous reaction to police might be considered common. *See Thomas v. State*, 762 S.W.2d 721, 723 (Tex.App.—Houston [1st Dist.] 1988, no pet.). In *Thomas*, the court found the evidence insufficient to support a conviction for possession of cocaine. The cocaine was found in a brown package inside an ashtray of a car occupied solely by Thomas. An officer testified that Thomas was nervous and had reached down quickly with one hand. He also possessed $1900. *Thomas*, 762 S.W.2d at 722. The court noted that Thomas did not speak English, and thus his nervous reaction was not uncommon. The court also pointed out that the car had been rented by someone other than Thomas, and the evidence did not establish how long he had been driving the car. Also, the evidence did not prove that Thomas was under the influence of a controlled substance or that the police found a controlled substance on his person or elsewhere in the car. Further, no fingerprints linked Thomas to the cocaine. *Thomas*, 762 S.W.2d at 723–24.

■ After Denbow looked at the police with surprise, he sped away. Although flight from the police may indicate knowledge of some illegal activity, it is not sufficient by itself to establish an affirmative link to a controlled substance. *See Herndon*, 787 S.W.2d at 410. In holding the evidence insufficient to uphold Herndon's conviction, the court stated that the only incriminating evidence showed that he attempted to "run off" two officers conducting surveillance and that he attempted to flee from the police. The court noted that, while both of those factors may have shown knowledge of some illegal activities at the residence, neither furnished an affirmative link to the controlled substances that were confiscated. Thus, the court concluded that the evidence did not show that Herndon had care, custody, and control of the controlled substance. *Herndon*, 787 S.W.2d at 410.

■ Denbow's look of surprise and his attempt to evade Officer Cunningham might indicate his knowledge of some ille-

gal activity in the area. He did not live at the apartment complex, and he was there during the early morning hours. However, we conclude that Denbow's surprise and flight standing alone are insufficient to establish that he possessed the methamphetamine. Thus, we must determine whether the evidence provides additional facts that affirmatively link Denbow to the controlled substance.

Access to the Parking Lot and/or the Car

■ The State does not dispute that the pill bottle was found in a public area. If an accused is not in exclusive possession of the place where a controlled substance is found, we cannot conclude that he had knowledge of or control over the substance unless the record demonstrates additional independent facts and circumstances that affirmatively link him to the controlled substance. *See Cude v. State,* 716 S.W.2d 46, 47 (Tex.Crim.App.1986). Mere presence, joint or solitary, in the vicinity of a controlled substance is not sufficient to establish possession of the substance if the evidence does not show that the accused had sole access to the area in which the controlled substance was found. *Humason,* 728 S.W.2d at 366–67. Further, an appellant's presence and his attempt to flee are insufficient without additional factors to support a conviction for possession of a controlled substance. *Herndon,* 787 S.W.2d at 410.

An accused's possessions found with a controlled substance, together with his proximity, may be sufficient to link him to the controlled substance. *See Goodall v. State,* 774 S.W.2d 821, 822 (Tex.App.—Fort Worth 1989, pet. ref'd). In *Goodall,* the police observed Goodall kneeling beside the driver's window of a car parked in front of his residence. Goodall had one of his arms and part of his head inside the car. Two women were seated in the car, one in the driver's seat and one in the back seat. One of the women stated that the car belonged to her. The police found cocaine inside a satchel on the driver's side in the back seat. The satchel also contained Goodall's checkbook and a utility bill bearing his name. *Goodall,* 774 S.W.2d at 821. In upholding the conviction for possession of cocaine, the court concluded that the jury could have determined that the satchel belonged to Goodall. However, the court noted that the cocaine was not found in a common area of the car, but rather was inside a satchel containing Goodall's possessions. *Goodall,* 774 S.W.2d at 822. Unlike the facts in *Goodall,* Denbow's possessions and the methamphetamine were found in a common area, a parking lot.

The evidence established Denbow's proximity to the methamphetamine because the pill bottle was found near his possessions. Further, Officer Cunningham found the methamphetamine near the car's left front bumper, where he had seen Denbow run. However, Officer Cunningham did not see Denbow drop any of the items. Denbow's fingerprints were not on the pill bottle. Although the trial court stated that it was reasonable to assume that the pill bottle did not have Denbow's fingerprints because he had gloves, we note that Officer Cunningham testified that he never saw Denbow wearing gloves. There is nothing in the record to indicate that Denbow was under the influence of drugs. The record does not indicate whether the pill bottle was in plain view in a well-lit area or whether the methamphetamine was visible inside the bottle. The officer had not seen the area where the pill bottle was found before he saw Denbow; thus, the officer did not know if the pill bottle was in the parking lot before the incident. Our record does not show whether the police found any drugs in the car driven by Denbow, although it was established that there were no drugs on Denbow's person. Finally, there is nothing in the record as to whether the police saw additional debris on the parking lot.

Denbow did not have exclusive access to the parking lot. We do not know whether there were other people in the area during the events described. Thus, the evidence does not exclude the reasonable hypothesis that someone other than Denbow dropped the pill bottle. Also, the evidence does not establish that Denbow owned, rented, or had exclusive access to the car that he was driving. Consequently, we cannot exclude the reasonable hypothesis that, even if the

pill bottle came from his car, it fell out as he exited the car without his knowledge of its presence. *See Humason,* 728 S.W.2d at 366–67. Finally, even if the evidence did establish that the pill bottle was in the car and that Denbow knew of its presence, the State's failure to prove that he had sole access to the car leaves open the reasonable hypothesis that he was unaware of the pill bottle's contents. *See Humason,* 728 S.W.2d at 366; *Flores v. State,* 756 S.W.2d 86, 88 (Tex.App.—San Antonio 1988, pet. ref'd) (finding the evidence insufficient to support a conviction for possession of heroin where the police found the heroin inside a balloon near the appellant's feet, distinguishing between the controlled substance and its container being in plain view).

### CONCLUSION

We conclude that the evidence establishes, at the most, a strong suspicion or mere probability that Denbow exercised care, control, or management over the methamphetamine. Accordingly, we hold that it is insufficient to support this conviction. Because of our disposition of the case, we do not reach Denbow's further contention that the amount of the methamphetamine was too small to show that he knew that the matter possessed was a controlled substance. We sustain the point of error.

Consequently, we reverse the trial court's judgment and render a judgment of acquittal.